## A02A2027. STOGISAVLIJEVIC v. THE STATE.
(577 SE2d 18)

ADAMS, Judge.

Zoran Stogisavlijevic appeals his conviction of aggravated assault and criminal attempt to commit armed robbery. He contends the trial court committed error by refusing a requested mistrial, by refusing to direct where certain individuals should sit in the courtroom during part of the trial, and by failing to suppress evidence of his banking records.

Construed in favor of the verdict, the evidence shows that Stogisavlijevic and Oliver Alali were both members of the Third Battalion of the Seventy-fifth Ranger Regiment stationed at Fort Benning, Georgia. Aware that Alali wanted to buy a car, Stogisavlijevic lied to Alali that he had an uncle who could give Alali a good deal. A local car dealer who was aware of the ruse had offered to pay Stogisavlijevic $200 for each car sold on Stogisavlijevic's referrals.

On April 28, 2001, Stogisavlijevic picked up Alali and drove to Alali's bank where Alali, who was 19 years old at the time, withdrew $6,000 cash and put the money in his pants pocket. Stogisavlijevic then drove 30 miles or so in a direction away from the car dealership. He told Alali that the dealership did not open until later, and he suggested, in connection with a discussion they had about hunting, that they kill time by looking for deer tracks in the woods. In a wooded area, Alali followed Stogisavlijevic's directions to look in a certain direction for deer. Stogisavlijevic then approached Alali from behind with a knife, stabbed him in the neck, and reached for the money in his pocket. Alali yelled and pushed him away, and both men fled — Alali to a nearby house for assistance, and Stogisavlijevic to his home in Columbus.

The State also introduced Stogisavlijevic's banking records, which showed that he was in financial distress at the time of the attack.

1. Stogisavlijevic contends the trial court committed reversible error when it denied his motion for mistrial after Alali placed his character in issue in the presence of the jury. During direct examination, Alali explained that while they were driving toward the wooded area, Stogisavlijevic commented about the money, which Alali was then holding in his hand, and said that "he used to have that much money dealing drugs." Stogisavlijevic objected and moved for a mistrial. The prosecutor explained that the statement was not responsive to his question, that he had cautioned the witness on this topic, and that the statement was a part of the res gestae.

In response, the trial court instructed the jury at length that they should disregard the statement and asked whether any juror could not do so. When none responded, the court denied the motion. Stogisavlijevic renewed his motion for mistrial, which the court denied. The prosecutor stated that he would "try to avoid anything like that" in the future and, upon resuming direct examination, reminded Alali to "follow[ ] the instructions that I previously gave you."

We find no error because this testimony included a statement made by [Stogisavlijevic] during the commission of the offenses for which he was indicted and was an integral part of the res gestae. Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense.

(Citation and punctuation omitted.) *Scott v. State*, 227 Ga. App. 900, 901 (3) (490 SE2d 208) (1997). The testimony was arguably relevant to show Stogisavlijevic's focus on Alali's money. We find no abuse of discretion.

2. After being sequestered during the trial, two trial witnesses, two sentencing witnesses, Alali's commander, and perhaps three or four more soldiers entered the courtroom to hear closing arguments. All were soldiers in full uniform including decorations, and they sat together with Alali in the first two rows of seats as close as possible to the jury box, which was located approximately 15 feet away. Five of these soldiers were listed on the State's witness list, and the State asserted at trial that all had been under subpoena for trial.

Stogisavlijevic objected "to the front row being filled up, due to the fact it's the closest to the jury box with all of these people and Mr. Alali sitting in the middle of them." Stogisavlijevic requested that the court "at a minimum . . . ask them just to move one row back out of circumspection and decorum." The court denied the request and held that unless they behaved in an inappropriate manner, the court would not tell them where they could sit. During the jury deliberation, Stogisavlijevic again objected to the presence of a "cheerleading section" at the evening dismissal. The court noted that the soldiers had "conducted themselves completely appropriately and by no gestures or movements or anything have they done anything that I would note, that I feel, needs to be corrected." The court acknowledged that the soldiers were seated as Stogisavlijevic described but noted that Stogisavlijevic wore his uniform as well. Ultimately, the court did not grant Stogisavlijevic's request for a buffer of one row between the jury and the soldiers.

"It is the right of every person accused of crime in this State to have a fair and impartial trial, free from any demonstration or disorder of a nature calculated to prejudicially affect the jurors trying his case." (Citation omitted.) *Glenn v. State*, 205 Ga. 32, 34 (52 SE2d 319) (1949). But the trial judge is vested with broad discretion to determine whether courtroom conduct is inherently prejudicial. *Pratt v. State*, 228 Ga. App. 567, 569 (492 SE2d 310) (1997). *Pratt* is instructive. In that case, after being sequestered during the trial, 25 uniformed correctional officers appeared in the courtroom after the evidence had closed but before the court's charge to the jury. Id. at 568. This Court held that the trial court had not abused its discretion by letting the officers remain in the courtroom where there was no evidence of pretrial publicity, a hostile community atmosphere, or any other factor which would warrant the conclusion that the presence of the officers was actually or inherently prejudicial. Id. Although in *Pratt* the 25 guards were seated toward the back of the courtroom, in this case there were fewer soldiers and the trial judge was in the best position to determine whether their presence or location was inherently prejudicial. The court also noted and considered the fact that Stogisavlijevic was also in uniform during the trial.

Under the circumstances, we cannot say that the court abused its discretion by denying Stogisavlijevic's request that the men move one row back. See also *Hicks v. State*, 254 Ga. App. 814, 815 (563 SE2d 897) (2002) (no reversible error where court refused to exclude 45 high school children from trial of child molestation case).

3. We find no merit to Stogisavlijevic's contention that the court erred by admitting banking records for accounts belonging to Stogisavlijevic and his wife. On appeal Stogisavlijevic contends that the records were not related to the charges against him and that use

of the records was improper under OCGA § 7-1-360. OCGA § 7-1-360 does not support Stogisavlijevic's argument. That Code section provides that financial institutions are not prohibited from disclosing or producing certain financial information to third parties where those records are requested "in conjunction with an ongoing criminal or tax investigation of the depositor or other customer by a state or federal grand jury, taxing authority, or law enforcement agency." OCGA § 7-1-360 (a) (3).

With regard to relevance, evidence of the defendant's financial condition may be admissible on the issue of motive. See, e.g., *Pelligrini v. State*, 174 Ga. App. 84, 85 (2) (329 SE2d 186) (1985). In *Stoudemire v. State*, 261 Ga. 49, 50 (3) (401 SE2d 482) (1991), the Supreme Court held that the State may not present evidence that the victim had an insurance policy benefitting the defendant unless the State presented independent evidence of a nexus between the policy and the crime charged. Even if that general rule applies to financial evidence other than insurance, which we do not hold, in this case the State showed a nexus between Stogisavlijevic's banking records and his crime, including that Stogisavlijevic was living beyond his means and was willing to engage in a ruse with a local car dealer to make money on referrals, which suggested a motive for the crime. The trial court did not abuse its discretion in admitting this evidence. See also *Sabree v. State*, 195 Ga. App. 135, 137-138 (2) (392 SE2d 886) (1990).

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED JANUARY 27, 2003.

*Frank K. Martin, John T. Martin*, for appellant.
*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.